UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

OSCAR STARKER,                          :

                    Plaintiff,          :       17 Civ. 6812 (HBP)

        -against-                       :       OPINION
                                                AND ORDER
SPIRIT AIRLINES, et al.,                :

                    Defendants.         :

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/3/19

                PITMAN, United States Magistrate Judge:


I.  Introduction


            By notice of motion dated October 31, 2018, defendants
seek an Order pursuant to Fed.R.Civ.P. 56 granting summary
judgment dismissing plaintiff's First Amended Complaint (Notice
of Motion, dated Oct. 31, 2018 (Docket Item ("D.I.") 31)).  By
notice of motion dated October 30, 2018, plaintiff seeks an Order
pursuant to Fed.R.Civ.P. 55 granting a default judgment against
defendant Sherron Hines (Notice of Motion, dated Oct. 30, 2018
(D.I. 36)).  All parties have consented to my exercising plenary
jurisdiction pursuant to 28 U.S.C. § 636(c).

            For the reasons set forth below, defendants' motion for
summary judgment is granted in part and denied in part.  Plain-
tiff's motion for a default judgment is denied.

## II. Background

### A. Facts

This case arises out of plaintiff's alleged mistreatment by employees of defendant Spirit Airlines ("Spirit").

On July 21, 2017, plaintiff boarded an 8:29 p.m. flight operated by Spirit from New York's LaGuardia Airport to Fort Lauderdale, Florida (Statement of Material Facts Pursuant to Local Civil Rule 56.1, dated Oct. 31, 2018 (D.I. 33) ("Defs. Rule 56.1 Stat.") ¶¶ 7, 9, citing Deposition of Oscar Starker (D.I. 34-1) ("Pl. Dep.") at 59, 69-70, attached as Ex. A to Declaration of Timothy G. Hourican, dated Oct. 31, 2018 (D.I. 34) ("Hourican Decl.")). Plaintiff was assigned seat 25C in an exit row of the aircraft (Defs. Rule 56.1 Stat. ¶ 10, citing Pl. Dep. at 73 and Deposition of Sherron Hines (D.I. 34-2) ("Hines Dep.") at 19, attached as Ex. B to Hourican Decl.).

Passengers seated in an exit row receive a special safety briefing from a flight attendant in addition to the standard safety briefing given to all passengers (Defs. Rule 56.1 Stat. ¶ 11, citing Hines Dep. at 19-23, 48). Passengers in an exit row must give their "undivided attention" to this safety briefing, and if a passenger cannot or does not want to comply with the requirements of sitting in the exit row, he may move to

2

a different seat in the aircraft (Defs. Rule 56.1 Stat. ¶¶ 12-13, citing Hines Dep. at 22-23, 44-45, 60).

Spirit's Contract of Carriage provides that "[i]t is the customer's responsibility to notify Spirit of a unique seating need. In accordance with this Contract of Carriage, Spirit may refuse to transport individuals who are unable or unwilling to comply with Spirit's seating requirements." (Defs. Rule 56.1 Stat. ¶ 41, citing Hines Dep. at 58 and Spirit Contract of Carriage, dated July 10, 2017 (D.I. 34-3) ("Contract of Carriage") ¶ 4.11.1, attached as Ex. C to Hourican Decl.). The Contract of Carriage further provides that "[a] customer shall not be permitted to board the aircraft or may be required to leave an aircraft if that customer . . . interferes or attempts to interfere with any member of the flight crew in the pursuit of his/her duties" (Defs. Rule 56.1 Stat. ¶ 38, citing Hines Dep. 56-57 and Contract of Carriage ¶ 4.3.1.c.). Finally, the Contract of Carriage provides that "[i]f a customer is not permitted to board and/or required to leave an aircraft for safety and/or regulatory reasons under paragraph 4.3 and its sub sections, the customer will not be eligible for a refund." (Defs. Rule 56.1 Stat. ¶ 39, citing Contract of Carriage ¶ 4.3.2.).

The parties' versions of the material events are substantially different.

3

Defendants allege that when flight attendant Sherron Hines ("Hines") asked that the passengers seated in the exit row, including plaintiff, pay attention to her exit row briefing, plaintiff was using his cell phone (Defs. Rule 56.1 Stat. ¶ 16, citing Hines Dep. at 22). According to defendants, plaintiff did not get off his cell phone and "motioned" for Hines to give her exit row briefing (Defs. Rule 56.1 Stat. ¶ 17, citing Hines Dep. at 23-24). Defendants claim that Hines again asked plaintiff to get off his cell phone, and plaintiff again motioned for Hines to give the exit row briefing while he continued his phone call (Defs. Rule 56.1 Stat. ¶¶ 18-19, citing Hines Dep. at 24-25, 41, 46-47). Hines then offered plaintiff the opportunity to move to a seat that was not in the exit row so that plaintiff could continue his phone call (Defs. Rule 56.1 Stat. ¶¶ 20-21, citing Hines Dep. at 43-45, 58 and Pl. Dep. at 92-95). Defendants allege that "[p]laintiff became confrontational and combative," refused to get off his cell phone and told Hines that "he would get off the aircraft before he moved his seat" (Defs. Rule 56.1 Stat. ¶¶ 22-23, citing Hines Dep. at 26, 28, 38, 40, 52-55).

Defendants claim that a second flight attendant then told plaintiff that if he would not move from the exit row, he would have to get off the aircraft (Defs. Rule 56.1 Stat. ¶ 25, citing Hines Dep. at 28, 38, 40, 52-54). After being informed of

4

the situation with plaintiff, the captain of the flight agreed that if plaintiff would not move from the exit row, he would have to leave the aircraft (Defs. Rule 56.1 Stat. ¶¶ 26-27, citing Hines Dep. at 29, 39). After speaking with a Spirit customer service agent, plaintiff voluntarily disembarked the aircraft before takeoff (Defs. Rule 56.1 Stat. ¶¶ 28-29, citing Hines Dep. at 29-30, 39 and Pl. Dep. at 103-05).

Plaintiff alleges that he made no phone calls during the entire time he was on the aircraft (Declaration of Oscar Starker, dated Dec. 21, 2018 (D.I. 50) ("Pl. Decl.") ¶ 7). According to plaintiff, he told Hines that he was trying to call his mother but that his phone was not working, and Hines responded by calling plaintiff a "momma's boy" and telling him that he could get off the aircraft and be left behind if he wanted to make a phone call (Pl. Dep. at 84-85). Plaintiff claims that he then tried to text a friend to relay the message to plaintiff's mother that he was flying to Florida (Pl. Dep. at 87-88). While plaintiff was texting his friend, Hines asked him to stop texting so that she could give the exit row safety briefing (Pl. Dep. at 90). Plaintiff replied that he needed just "one second to pretty much press the button and send the text," but Hines responded, "No. Stop." (Pl. Dep. at 90). Plaintiff claims that he then stopped texting (Pl. Dep. at 91).

Although plaintiff had stopped texting, plaintiff states that Hines, nevertheless, instructed him to change seats with another passenger seated in front of plaintiff (Pl. Dep. at 91-92). Plaintiff asked why he was being told to change seats, but Hines did not answer (Pl. Dep. at 91-92). Plaintiff claims that when he refused to change seats, Hines said, "If you're not going to leave your seat we're going to have to force you out of the plane." (Pl. Dep. at 92-93). Plaintiff continued to refuse to change seats, at which point a male Spirit employee said to plaintiff, "If you're not going to move from your seat we're going to use physical force." (Pl. Dep. at 98). According to plaintiff, the male flight attendant then touched plaintiff's shoulder with his hand or arm and pushed plaintiff (Pl. Dep. at 101-02, 107-10, 113-14). Plaintiff then disembarked the plane before it departed "because [he] was afraid." (Pl. Dep. at 104).

B. Procedural History

Plaintiff commenced this action by filing a summons with notice in New York State Supreme Court, New York County, on August 14, 2017, alleging that Spirit committed an unspecified intentional tort by forcibly removing him from one of its flights and breached its contract with plaintiff; plaintiff sought $1,000,000.00 in damages (Summons with Notice, Notice of Removal,

6

dated Sept. 7, 2017 (D.I. 1), Ex. 1).  On September 7, 2017,

defendants removed the action to this Court (Notice of Removal,

dated Sept. 7, 2017 (D.I. 1)).

Plaintiff filed an amended complaint on January 25,

2018, alleging six common law claims:  (1) assault and battery

against all defendants; (2) assault and battery against Spirit;

(3) negligent hiring and retention; (4) breach of contract; (5)

breach of the implied covenant of good faith and fair dealing and

(6) intentional infliction of emotional distress; plaintiff seeks

compensatory and punitive damages (First Amended Compl., dated

Jan. 25, 2018 (D.I. 18)).

III.  Analysis

A.  Applicable
    Legal Standards

The standards applicable to a motion for summary

judgment are well-settled and require only brief review.

> Summary judgment may be granted only where there is no
> genuine issue as to any material fact and the moving
> party . . . is entitled to a judgment as a matter of
> law.  Fed.R.Civ.P. 56(c).  In ruling on a motion for
> summary judgment, a court must resolve all ambiguities
> and draw all factual inferences in favor of the
> nonmoving party.  Anderson v. Liberty Lobby, Inc., 477
> U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).
> To grant the motion, the court must determine that
> there is no genuine issue of material fact to be tried.
> Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.

Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue derives from the "evidence [being] such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. 2505. The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986), or by a factual argument based on "conjecture or surmise," Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The Supreme Court teaches that "all that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L.Ed.2d 569 (1968); see also Hunt v. Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L.Ed.2d 731 (1999). It is a settled rule that "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (brackets in

original); accord Reeves v. Sanderson Plumbing Prods., Inc., 530

U.S. 133, 150-51 (2000)[1]; Estate of Gustafson ex rel. Reginella

v. Target Corp., 819 F.3d 673, 675 (2d Cir. 2016); Cortes v. MTA

N.Y.C. Transit, 802 F.3d 226, 230 (2d Cir. 2015); Deep Woods

Holdings, L.L.C. v. Sav. Deposit Ins. Fund of Republic of Turk.,

---

[1]Although the Court in Reeves was reviewing the denial of a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50, the same standards apply to a motion for summary judgment pursuant to Fed.R.Civ.P. 56. Reeves v. Sanderson Plumbing Prods., Inc., supra, 530 U.S. at 150-51.

745 F.3d 619, 622-23 (2d Cir. 2014); <u>Hill v. Curcione</u>, 657 F.3d 116, 124 (2d Cir. 2011).

"Material facts are those which 'might affect the outcome of the suit under the governing law' . . . ." <u>Coppola v. Bear Stearns & Co.</u>, 499 F.3d 144, 148 (2d Cir. 2007), <u>quoting</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]'" <u>Cine SK8, Inc. v. Town of Henrietta</u>, 507 F.3d 778, 788 (2d Cir. 2007) (second alteration in original), <u>quoting</u> <u>Readco, Inc. v. Marine Midland Bank</u>, 81 F.3d 295, 298 (2d Cir. 1996).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, <u>supra</u>, 477 U.S. at 322-23, <u>quoting</u> Fed.R.Civ.P. 56; <u>accord</u> <u>Crawford v.</u>

9

<u>Franklin Credit Mgmt. Corp.</u>, 758 F.3d 473, 486 (2d Cir. 2014)
("[W]here the nonmoving party will bear the burden of proof on an
issue at trial, the moving party may satisfy its burden [on a
summary judgment motion] by point[ing] to an absence of evidence
to support an essential element of the nonmoving party's case."
(inner quotations and citations omitted, last alteration in
original)).

### B. Application of the Foregoing Principles

Defendants argue that summary judgment is appropriate
on two grounds. First, defendants argue that plaintiff's claims
are preempted by the Airline Deregulation Act ("ADA") and the
Federal Aviation Act ("FAA") (Defendants' Memorandum of Law in
Support of their Motion for Summary Judgment, dated Oct. 31, 2018
(D.I. 32) ("Defs. Memo.") at 7-15). Second, defendants argue
that even if plaintiff's claims are not preempted, they should be
dismissed on the merits (Defs. Memo. at 15-25). Plaintiff argues
that defendants have failed to establish that there is no genuine
dispute as to any material fact (Pl. Decl. ¶¶ 21-27).[2]

---

[2]Plaintiff does not address defendants' argument that his
claims are preempted by federal law.

### 1. Plaintiff's
### Tort Claims

Plaintiff's common law claims for assault and battery, negligent hiring and retention and intentional infliction of emotional distress are preempted by the ADA and, accordingly, must be dismissed.

> The Supremacy Clause of the Constitution provides that
>
> [t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI, Cl. 2. "Preemption may be express when a federal statute 'expressly directs that state law be ousted,' or implied when 'Congress intended the Federal Government to occupy a field extensively, or when state law actually conflicts with federal law.'" Fawemimo v. Am. Airlines, Inc., 751 F. App'x 16, 18 (2d Cir. 2018), quoting Air Transp. Ass'n of Am., Inc. v. Cuomo, 520 F.3d 218, 220 (2d Cir. 2008).

> The ADA provides that
>
> [e]xcept as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

11

49 U.S.C. § 41713(b)(1); see Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992) ("State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted under [the ADA]"). The Supreme Court has held that "the phrase 'other provision having the force and effect of law' includes common-law claims." Northwest, Inc. v. Ginsberg, 572 U.S. 273, 284 (2014); accord Fawemimo v. Am. Airlines, Inc., supra, 751 F. App'x at 18; Cox v. Spirit Airlines, Inc., 340 F. Supp. 3d 154, 157 (E.D.N.Y. 2018); Hekmat v. U.S. Transp. Sec. Admin., 247 F. Supp. 3d 427, 431 (S.D.N.Y. 2017) (Buchwald, D.J.); Abdel-Karim v. EgyptAir Airlines, 116 F. Supp. 3d 389, 403 (S.D.N.Y. 2015) (Koeltl, D.J.), aff'd sub nom., Abdel-Karim v. Egyptair Holding Co., 649 F. App'x 5 (2d Cir. 2016) (summary order).

　　　　In resolving a claim of preemption under the ADA, courts in this Circuit routinely apply the three-part test set out by then-District Judge Sotomayor in Rombom v. United Air Lines, Inc.: (1) "whether the activity at issue in the claim is an airline service"; (2) "whether the claim affects the airline service directly or tenuously, remotely, or peripherally" and (3) "whether the underlying tortious conduct was reasonably necessary to the provision of the service." Rombom v. United Air Lines, Inc., 867 F. Supp. 214, 221-22 (S.D.N.Y. 1994) (Sotomayor, then

12

D.J., now Sup. Ct. Justice); accord Hekmat v. U.S. Transp. Sec. Admin., supra, 247 F. Supp. 3d at 431; Fawemimo v. Am. Airlines, Inc., 14 Civ. 4510 (PKC), 2017 WL 398387 at *3 (Jan. 30, 2017) (Castel, D.J.); Doe v. Delta Airlines, Inc., 129 F. Supp. 3d 23, 35 (S.D.N.Y. 2015) (Engelmayer, D.J.); Abdel-Karim v. EgyptAir Airlines, supra, 116 F. Supp. 3d at 404.

      With respect to the first prong of the Rombom test, defendants' challenged conduct clearly constitutes a service under the ADA. "[T]he determination of service rests heavily on the extent to which the activity in question is ordinary and relates directly to air travel." Weiss v. El Al Isr. Airlines, Ltd., 471 F. Supp. 2d 356, 361 (S.D.N.Y. 2006) (Lynch, then D.J., now Cir. J.); accord Abdel-Karim v. EgyptAir Airlines, supra, 116 F. Supp. 3d at 405. "There are few acts more fundamental to the service of air travel than the decision by an airplane crew whether or not to transport a passenger." Lozada v. Delta Airlines, Inc., 13 Civ. 7388 (JPO), 2014 WL 2738529 at *4 (S.D.N.Y. June 17, 2014) (Oetken, D.J.); accord Ruta v. Delta Airlines, Inc., 322 F. Supp. 2d 391, 400 (S.D.N.Y. 2004) (McMahon, D.J.) ("[T]he Captain's decision to refuse to transport Plaintiff constitutes a 'service' under [the ADA]"). At their core, plaintiff's tort claims relate to defendants' decision to refuse to transport plaintiff unless he moved to a different

13

seat. Accordingly, defendants' conduct satisfies the first prong of the Rombom test.

With respect to the second prong of the Rombom test, plaintiff's tort claims implicate the airline service directly. See Lozada v. Delta Airlines, Inc., supra, 2014 WL 2738529 at *4 (second prong of Rombom test satisfied where plaintiff's claim "pertains exclusively" to plaintiff's removal from plane); accord Ruta v. Delta Airlines, Inc., supra, 322 F. Supp. 2d at 401. As explained above, plaintiff's tort claims relate to defendants' decision to remove plaintiff from the plane when he refused to move to a different seat. Thus, plaintiff's tort claims implicate defendants' provision of service directly.

With respect to the third prong of the Rombom test, defendants' alleged conduct was not sufficiently unreasonable to avoid preemption by the ADA. "[T]his prong exempts from preemption only those actions classifiable as 'outrageous or unreasonable.'" Lozada v. Delta Airlines, Inc., supra, 2014 WL 2738529 at *4, quoting Rombom v. United Air Lines, Inc., supra, 867 F. Supp. at 223. "'The determination of reasonableness for [ADA preemption] purposes is a question of law either where no dispute exists as to the extent of the conduct, or where a court accepts plaintiff's version of the conduct.'" Farash v. Cont'l Airlines, Inc., 574 F. Supp. 2d 356, 362-63 (S.D.N.Y. 2008) (Sullivan, then

14

D.J., now Cir. J.) (alteration in original), quoting Rombom v. United Air Lines, Inc., supra, 867 F. Supp. at 222. "Courts have deemed conduct outrageous or unreasonable where the plaintiff was arrested, discriminated against on the basis of his or her inclusion within a protected class, or physically injured." Lozada v. Delta Airlines, Inc., supra, 2014 WL 2738529 at *4 (internal citations omitted).

Here, even accepting plaintiff's version of the facts, defendants' alleged conduct did not rise to the level required to avoid preemption. Plaintiff does not allege that he was arrested, discriminated against or physically injured as a result of defendants' conduct. Furthermore, although plaintiff alleges that Hines and a male flight attendant threatened to use force to remove him from the plane and that the male flight attendant touched plaintiff's shoulder, plaintiff concedes that he disembarked the plane under emotional, rather than physical, duress. Finally, plaintiff does not dispute that defendants' gave him the option to change seats rather than disembarking the plane.

The only case I have found involving remotely similar facts in which the Court declined to find that the ADA preempted a common law claim is Peterson v. Cont'l Airlines, Inc., 970 F. Supp. 246 (S.D.N.Y. 1997). In that case, the plaintiff alleged that she was arrested, handcuffed and physically removed from an

15

overbooked flight despite the fact that her niece, who was

traveling with her, was willing to surrender her seat instead.

The late Honorable Shirley Wohl Kram, United States District

Judge, denied the defendant's motion to dismiss on preemption

grounds, finding that there were disputed issues of fact as to

whether the defendant's actions were outrageous.

> In the present case, Peterson alleges more than mere
> rudeness on the part of the flight attendants. She
> claims that she was treated in a discriminatory manner
> and that the police were summoned out of Continental's
> spite and malice towards her. Accordingly, at this
> juncture, Continental's motion to dismiss based on
> preemption must be denied.

Peterson v. Cont'l Airlines, Inc., supra, 970 F. Supp. at 251.

Plaintiff's allegations are distinguishable from those

in Peterson. Plaintiff here was offered the opportunity to

change seats and continue with his trip; Peterson was not.

Plaintiff here was not arrested and placed in handcuffs; Peterson

was. Plaintiff here makes no allegation of discrimination and

personal spite and malice; Peterson did. Thus, I find that

Peterson is factually distinguishable.

Here, no matter how unjustified defendants' decision to

demand that plaintiff change seats, there is no dispute that

defendants continued to offer to transport plaintiff from New

York to Florida. Thus, defendants' alleged conduct was not so

outrageous or unreasonable so as to avoid preemption by the ADA,

16

and, accordingly, plaintiff's claims for assault and battery,
negligent hiring and retention and intentional infliction of
emotional distress must be dismissed.

Even if plaintiff's claim for negligent hiring and
retention were not preempted by the ADA, plaintiff has not
offered evidence sufficient to establish a necessary element of
the claim.

> To state a claim for negligent supervision or
> retention under New York law, in addition to the stan-
> dard elements of negligence, a plaintiff must show:
> (1) that the tort-feasor and the defendant were in an
> employee-employer relationship; (2) that the employer
> knew or should have known of the employee's propensity
> for the conduct which caused the injury prior to the
> injury's occurrence; and (3) that the tort was commit-
> ted on the employer's premises or with the employer's
> chattels.

Doe v. Montefiore Med. Ctr., 598 F. App'x 42, 43 (2d Cir. 2015)
(summary order) (internal quotation marks omitted); accord
Papelino v. Albany Coll. of Pharm. of Union Univ., 633 F. 3d 81,
94 (2d Cir. 2011); Ehrens v. Lutheran Church, 385 F.3d 232, 235
(2d Cir. 2004). Plaintiff has failed to offer any evidence that
Hines or any other Spirit employee had a propensity for violence
or any other improper behavior. Furthermore, plaintiff offers no
evidence to establish that, even if any Spirit employee did have
such a propensity, Spirit knew or should have known of it prior
to the date of plaintiff's flight. Thus, even if plaintiff's

17

claim for negligent hiring and retention were not preempted by the ADA, plaintiff has failed to make a sufficient showing of a necessary element of the claim, and, accordingly, this claim must be dismissed.

### 2.  Plaintiff's Contract Claims

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is preempted by the ADA.  "When the law of a State does not authorize parties to free themselves from the [implied] covenant [of good faith and fair dealing], a breach of covenant claim is pre-empted . . . ."  Northwest, Inc. v. Ginsberg, 572 U.S. 273, 287 (2014).

> Under Florida law,[3] every contract contains an implied covenant of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations.  A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation.

Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1151 (11th Cir. 2005), citing Cox v. CSX Intermodal, Inc., 732 So.2d 1092, 1097 (Fla. App. 1 Dist. 1999); accord Viridis

_____

[3]Defendants' memorandum of law cites to New York contract law.  However, the Contract of Carriage specifies that it is governed by Florida law (Contract of Carriage ¶ 13.1).

18

Corp. v. TCA Glob. Credit Master Fund, LP, 721 F. App'x 865, 877-78 (11th Cir. 2018); Jefferies, Leveraged Credit Prods., LLC v. Strategic Capital Res., Inc., 14 Civ. 1735 (TPG), 2016 WL 4467550 at *3 (S.D.N.Y. Aug. 22, 2016) (Griesa, D.J.); Purifoy v. Walter Inv. Mgmt. Corp., 13 Civ. 937 (RJS), 2015 WL 9450621 at *8 (S.D.N.Y. Dec. 22, 2015) (Sullivan, then D.J., now Cir. J.). In this case, the Contract of Carriage is governed by Florida law, which imposes an implied covenant of good faith and fair dealing on all contracts. Accordingly, plaintiff's claim for breach of the implied covenant of good faith and fair dealing must be dismissed because it is preempted by the ADA, pursuant to Northwest, Inc. v. Ginsberg, supra, 572 U.S. at 287.

In addition, plaintiff's claim for punitive damages is also preempted by the ADA. See Norman v. Trans World Airlines, Inc., 98 Civ. 7419 (BSJ), 2000 WL 1480367 at *6 (S.D.N.Y. Oct. 6, 2000) (Jones, D.J.). In Norman, the defendant airline denied the plaintiff permission to board her flight, and the Honorable Barbara S. Jones, United States District Judge, found that the defendant's conduct constituted a breach of the contract of carriage. Norman v. Trans World Airlines, Inc., supra, 2000 WL 1480367 at *6. However, Judge Jones denied the plaintiff's claim for punitive damages, noting that "[t]he Supreme Court has specifically held that the [ADA] forbids the invocation of state

19

law to enlarge or enhance remedies for breach beyond those provided in the contract." Norman v. Trans World Airlines, Inc., supra, 2000 WL 1480367 at *6, citing Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 233 (1995). In this case, plaintiff's possible recovery is similarly limited to the terms of the Contract of Carriage. Accordingly, plaintiff's claim for punitive damages must be dismissed.

However, plaintiff's claim for breach of contract is not preempted by the ADA. "The Supreme Court has held that the ADA does not preempt state-law based adjudication of routine breach-of-contract claims, so long as courts confine themselves to enforcing the parties' bargain." Levy v. Delta Airlines, 02 Civ. 477 (TPG), 2004 WL 2222149 at *3 (S.D.N.Y. Sept. 30, 2004) (Griesa, D.J.), citing Am. Airlines, Inc. v. Wolens, supra, 513 U.S. at 228; accord Cox v. Spirit Airlines, Inc., supra, 340 F. Supp. 3d at 158; Dover v. British Airways, PLC (UK), 12 CV 5567 (RJD)(CLP), 2017 WL 4358726 at *6 (E.D.N.Y. Sept. 29, 2017); Abdel-Karim v. EgyptAir Airlines, supra, 116 F. Supp. 3d at 404; Weiss v. El Al Isr. Airlines, Ltd., 433 F. Supp. 2d 361, 369-70 (S.D.N.Y. 2006) (Lynch, then D.J., now Cir. J.); Fondo v. Delta Airlines, Inc., 00 Civ. 2445 (JSM), 2001 WL 604039 at *2 (S.D.N.Y. May 31, 2001) (Martin, D.J.). Plaintiff claims that Spirit violated the Contract of Carriage by refusing to transport

him from New York to Fort Lauderdale. This is a simple breach of contract claim between the parties, and, therefore, it is not preempted by the ADA.

"To establish a claim of breach of contract under Florida law, a plaintiff must prove the following elements: (1) a valid contract; (2) a material breach; and (3) damages." Fishman v. Phila. Fin. Life Assurance Co., 11 Civ. 1283 (TPG), 2016 WL 2347921 at *10 (S.D.N.Y. May 3, 2016) (Griesa, D.J.), citing Beck v. Lazard Freres & Co., 175 F.3d 913, 914 (11th Cir. 1999); accord Estate of Leventhal ex rel. Bernstein v. Wells Fargo Bank, N.A., 14 Civ. 8751 (ER), 2015 WL 5660945 at *9 (S.D.N.Y. Sept. 25, 2015) (Ramos, D.J.); Anwar v. Fairfield Greenwich Ltd., 831 F. Supp. 2d 787, 794 (S.D.N.Y. 2011) (Marrero, D.J.). There is no dispute that the Contract of Carriage was a valid contract between the parties. However, the parties dispute whether Spirit committed a material breach and whether plaintiff suffered damages as a result. Defendants argue that Spirit did not breach the contract because plaintiff voluntarily disembarked the aircraft (Defs. Memo. at 19-20). Plaintiff states that he "did not leave [the] aircraft voluntarily, but was forced to leave the plane by the crew members" (Pl. Decl. ¶ 14). Plaintiff also testified at his deposition that he left the aircraft before it departed "because [he] was afraid" (Pl. Dep. at 104). Thus,

there remains a genuine issue of fact as to whether plaintiff disembarked the aircraft voluntarily or under duress.

Defendants argue, in the alternative, that Spirit did not breach the contract because Spirit "had the right under the Spirit Contract of Carriage" to remove plaintiff from the flight for interfering with Hines's duties (Defs. Memo. at 20). However, this argument presumes that the facts as set forth by defendants are accurate, namely that plaintiff refused to pay attention to Hines's exit row briefing and to move to a different seat. According to plaintiff, he did not interfere with Hines because he ceased using his cell phone as soon as Hines ordered him to stop (Pl. Dep. at 90-91), and, thus, there was no reason to ask him to change seats. Therefore, there also remains a genuine issue of fact as to whether plaintiff complied with the directives of the flight crew.

With respect to the element of damages, defendants argue that plaintiff was not entitled to a refund of his airfare because he interfered with the flight crew's duties (Defs. Memo. at 21). However, as explained above, this argument assumes that plaintiff did interfere with the flight crew's duties, a fact which plaintiff denies. If plaintiff was removed from the flight involuntarily, as he claims, the Contract of Carriage entitles him to compensation (Contract of Carriage ¶ 10.2). Thus, with

22

respect to the element of damages, there remains an issue of fact as to whether or not defendants removed plaintiff from the flight.

Accordingly, because plaintiff has made a sufficient showing that there remain genuine issues of material fact with respect to his claim for breach of contract, defendants' motion for summary judgment is denied as to this claim.

IV.  Conclusion

For all of the foregoing reasons, defendants' motion for summary judgment dismissing plaintiff's First Amended Complaint is granted with respect to all claims other than plaintiff's claim for breach of contract against Spirit, and it is denied as to that claim.  Because plaintiff's claims against defendant Sherron Hines are dismissed, plaintiff's motion for a default judgment against Hines is denied as moot.

The parties are reminded that pursuant to the scheduling Order previously entered in this matter (D.I. 25), the pretrial order and all other pretrial submissions required by my rules shall be filed on October 3, 2019.  Plaintiff shall serve a draft of his portion of the pretrial order on counsel for defendants no later than September 18, 2019.

The Clerk of the Court is respectfully requested to mark Docket Items 31 and 36 closed.

Dated:    New York, New York
          September 3, 2019

                              SO ORDERED

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Plaintiff <u>Pro</u> <u>Se</u>
Counsel for Defendants

24